## In Re Edwin Forrest Home

*Mark Jurikson*, for petitioner.

*Edwin P. Rome* and *Bernard Glassman*, for respondents.

*Lawrence Barth*, for Attorney General as parens patriae.

OPINION BY BRUNO, J., APRIL 24, 1981:

This matter is before the court upon the petition of William J. Green, as mayor of the City of Philadelphia, for a citation directed to the board of managers of The Edwin Forrest Home to show cause why they should not file an account pursuant to Section 7181 of the Probate, Estates and Fiduci-

aries Code of 1972, as amended. A timely answer was filed thereto by the board of managers. Additionally, Lawrence Barth, Esquire, entered an appearance for the Attorney General as parens patriae.

Edwin Forrest, the famous Shakespearean actor, died on December 12, 1872, leaving a will dated April 5, 1866 and codicils thereto dated April 5, 1866 and October 8, 1871. The will and codicils were probated before the Register of Wills of Philadelphia County on January 16, 1873.

By his will, Edwin Forrest created a residuary trust for his sisters, Caroline and Eleanora, for their lives or until their respective marriages, and directed that no later than twenty-one years after the death of the survivor of his sisters his trustees were to form a corporation to operate an institution to be known as "The Edwin Forrest Home," the paramount purpose of which "shall be for the support and maintenance of actors and actresses decayed by age or disabled by infirmity . . ."

On April 7, 1873 the trustees created a nonprofit corporation under the then existing laws of the Commonwealth. The Orphans' Court of Philadelphia County, by an adjudication of Hanna, J., dated May 10, 1882, awarded the assets of the estate to The Edwin Forrest Home.

The articles of incorporation and the bylaws of the Home reflect the plan for the Home outlined by Edwin Forrest in his will.

Article VI of the will and Section 6 of the articles of incorporation provide in relevant part as follows:

> There shall be a picture gallery for the preservation and exhibition of my collection of engravings, pictures, statuary and other works of art . . .

The petition for a citation filed by the mayor of Philadelphia alleges, in pertinent part, as follows:

> 9. Within the last several years the current managers have undertaken certain actions with a stated purpose of liquidating by sale some, if not all of the collection of engravings, pictures, statuary and other works of art comprising the art collection of Edwin Forrest, said collections being bequeathed in trust to the Edwin Forrest Home for *preservation* and *exhibition*.
>
> 10. The current managers have entered into a written contract with Christie's Auction House whereby two statues entitled "Comedy

and Tragedy" by William Rush and seven other paintings which were part of the Edwin Forrest Art Collection have been placed on public display and will be sold at public auction at Christie's in New York City, New York on Thursday, May 22, 1980. [As facts developed, this court issued a preliminary injunction on May 21, 1980, restraining the sale of "Comedy and Tragedy" and all other artworks in the collection. By agreement of all parties, the preliminary injunction was continued until the resolution of this matter and of other matters pertaining to the Home before the court.] The mayor contends that by selling the artworks the board of managers is not faithfully executing the terms of the will, and, therefore, an account is necessary.

The board of managers, in its answer, specifically denies the allegations contained in paragraphs 9 and 10 as being irrelevant and immaterial to the issue of whether an account should be filed in accordance with §7181 of the P.E.F. Code.

The mayor of the City of Philadelphia (hereinafter "petitioner"), claiming to be a party in interest under Article V of the will, contends that the Home holds the assets of Edwin Forrest's estate in trust; therefore, as a trustee, the Home is subject to the accounting requirements of §7181 of the P.E.F. Code. That being so, the Home must file an account in accordance with Rule 61 of the Supreme Court Orphans' Court Rules and with Rule 61.1 of the Philadelphia County Orphans' Court Rules. In the alternative, the petitioner contends that regardless of the applicability of §7181 of the P.E.F. Code, the court can order an orphans' court trustee type of account pursuant to Section 7783 of the Corporation Not for Profit Code, which is captioned "Review of Corporate Action."

The board of managers of the Edwin Forrest Home (hereinafter "Respondents") disagree. They submit that the mayor is not a party in interest under the will of the testator but rather under Section 5 of the articles of incorporation. They further submit that the Home holds the assets of Edwin Forrest's estate in fee and not in trust. That being so, they are not required to file a trustee's account.

The respondents do not contend that the Home is not subject to the jurisdiction of this court. Section 711(21) of the

P.E.F. Code and Pennsylvania Rule of Judicial Administration No. 2156 clearly vest the orphans' court with jurisdiction over and control of nonprofit corporations. They do contend, however, that the Pennsylvania Nonprofit Corporation Law of 1972 was specifically enacted by the legislature to govern the internal affairs of nonprofit corporations; therefore, absent some specific reference in the Nonprofit Corporation Law to the applicability to the Probate, Estates and Fiduciaries Code to nonprofit corporations (as in, for example, Section 7549 (b) of the Nonprofit Code), the Probate, Estates and Fiduciaries Code cannot be applied to nonprofit corporations.

To resolve this problem, it must first be determined the manner in which the Home holds the assets of Edwin Forrest's estate. If the Home holds the estate as a trustee then it must file a formal trustee's account in conformity with Local Rule 61.1. If, however, the Home holds the assets in fee for its corporate purposes, a determination must be made concerning the type of account, if any, which the Home must file. The matter appears to be one of the first impression.

Edwin Forrest's will makes delightful reading. It is elegantly written. It betokens an age, quite unlike ours, when gentlemanliness was one of the highest civic virtues and when gentlemen of wealth and privilege felt honor-bound to aid their less fortunate fellow citizens. Nonetheless, the will, like the writing of the bard so admired by the testator, is not free from ambiguity. However, careful exegesis discloses that the Home holds the property in fee for its general and charitable purposes.

After giving his entire estate in trust for the benefit of his sisters, the testator directs his trustees to "take and hold all said property and estate in trust for an institution, which they will call 'The Edwin Forrest Home,' to embrace the purposes of which I hereinafter give the outline, which institution shall be established at my country place called 'Springbrook' . . ." The testator then outlines in some detail his plan for the Home. Finally, in the paragraph immediately preceding the signature clause, Edwin Forrest charges his trustees with the duty of forming a corporation for the purpose of carrying into effect his plan for the Home. He instructs them as

follows:

> Whensoever the requisite charter shall be obtained and ready to proceed to carry out its design, then it shall be the duty of said Trustees to assign and convey all my said property and estate unto the said "Edwin Forrest Home," their successors and assigns forever, and for the latter to execute and deliver under the corporate seal, a full and absolute discharge and acquittance forever, — with or without auditing of accounts by an auditor of the Court, as they may think proper — unto the said Executors and Trustees.

It is apparent, that, upon the death or marriage of the survivor of his sisters, Edwin Forrest intended that his trustees continue to hold his estate in trust until such time as they cause a corporation to be formed. That being done, the trustees are to transfer the trust corpus to the corporation. In return the corporation is to give, under corporate seal, a full discharge to the trustees.

Notably absent for the directions to transfer the corpus to the corporation are the words "in trust" or words of like import. Were Edwin Forrest contemplating the establishment of a perpetual charitable trust with the corporation as trustee he need only have inserted the words of conveyance "in trust" in the paragraph beginning "Whensoever." The absence of the appropriate words of conveyance clearly shows that the corporation is to take the trust corpus in fee upon termination of the life estates. When the trustees make the transfer to the corporation the trust terminates because its function is completed. Thereafter, the corporation holds the property as its own for the purposes for which it was formed.

The incidental mention of a breach of trust in Article V of the will does not in any way alter the manner in which the Home holds the property. That article reads as follows:

> Should there be any failure of the Managers to fill any vacancy which may occur in their Board for three months, or should they in any respect fail to fulfill their trust according to the intent of my will and the charter of the Institution, it is my will that upon the petition of any two or more of said Managers, or of the Mayor of the City, the Orphans' Court of Philadelphia County shall make such appointments to fill any vacancy or vacancies and all orders and decrees necessary to correct any failure or breach of trust which shall appear to said Court to be required, as in case of any other testamentary trust, so that the purposes of this charity may never fail or be abused.

At most, Article V makes the mayor of Philadelphia a party entitled to intervene when and if the Home fails to perform the charitable functions for which it was established. The use of the phrases "fulfill their trust" and "breach of trust" cannot be taken as overriding the gift in fee to the corporation. Read in context, it is clear the phrases were not used in their highly technical sense denoting a conveyance of equitable title for the use of someone else. Rather, they were used in a nontechnical and practical manner.

In addition, the testator's reference to the authority of the orphans' court to make decrees and orders necessary to correct breaches of trust "as in the case of any other testamentary trust" cannot convert the gift in fee into a gift in trust. In fact, at the time the will was written the reference was meaningless in light of the conveyance in fee. Once the trustees conveyed the corpus to the corporation in fee the orphans' court lost all jurisdiction over the assets. It was not until the enactment of §711(21) of the P.E.F. Code and the promulgation of Rule 2156 of the Pennsylvania Rules of Judicial Administration that the Home became subject to the jurisdiction of this court. Edwin Forrest cannot give the court subject matter jurisdiction.

Having found that the Home holds the property of Edwin Forrest in fee for its own corporate purposes, it must now be determined if the Home is required to file an orphans' court account.

Section 7181 of the P.E.F. Code, the section under which the petitioner seeks to compel an accounting, provides as follows:

> A trustee shall file an account of his administration at the termination of the trust and may file an account at any other time. The court may direct him to file an account at any time.

This section clearly addresses itself to trustees. It is, therefore, not applicable to nonprofit corporations not holding assets in trust. However, the petitioner contends that regardless of the applicability of Section 7181 of the P.E.F. Code to the Home, the court can order a trustee's account pursuant to Section 7783 of the Corporation Not for Profit Code (15 P.S. §7783). That section provides:

§7783 Review of Contested Corporate Action

(a) General rule. — Upon petition of any person whose status as, or whose rights or duties as, a member, director, member of another body, officer or otherwise of a nonprofit corporation are or may be affected by any corporate action, the court may hear and determine the validity of such corporate action.

(b) Powers and procedures. — The court may make such orders in any such case as may be just and proper, with power to enforce the production of any books, papers and records of the corporation and other relevant evidence which may relate to the issue. The court shall provide for notice of the pendency of the proceedings under this section to all persons affected thereby. If it is determined that no valid corporate action has been taken, the court may order a meeting to be held in accordance with section 7782 of this title (relating to proceedings prior to corporate action).

The court does not agree with the petitioner that Section 7783 of the Corporation Not for Profit Code gives a court of competent jurisdiction the power to order a nonprofit corporation not holding property in trust to file a trustee's account.

The Pennsylvania Nonprofit Corporation Law of 1972 was enacted to govern the affairs of nonprofit corporations. The law is an organic whole, complete unto itself. It contains all the provisions necessary to control effectively the affairs of nonprofit corporations. For example, there are provisions concerning corporate powers (§§7501-7510), financial matters (§§7541-7555), and judicial supervision of corporate action (§§7781-7783).

One such section, §7555, requires that nonprofit corporations provide detailed financial data annually to their members and requires that these certified financial statements be filed with the minutes of the corporation. The filing of certified financial statements is all that the legislature requires nonprofit corporations to do. The court would be placing an onerous burden upon nonprofit corporations were it to require them to keep two sets of books — one for the statement required under 15 P.S. §7555 and one for accounts of the type customarily filed by trustees. In fact, there is some authority to effect that the court cannot order a trustee's account. Section 348, Comment of the *Restatement of Trusts, 2d*, contains the notation that ". . . if property is bequeathed to a charitable corporation, the income to be used for one of its charitable purposes, it is not subject to a statutory rule re-

quiring accountings in a probate court which is applicable to charitable trusts."

The mayor of the City of Philadelphia, as an interested party under Section 5 of the articles of incorporation, has an absolute right to be given the information which the Home is required to file annually under Section 7555 of the Not for Profit Corporation Code. The mayor also has, pursuant to Sections 7781-83 of that Code, appropriate means by which he can seek redress in the orphans' court for what he considers the failure of the Home to fulfill its corporate purposes. The mayor cannot, however, compel the Home to file a trustee's account pursuant to Section 7181 of the Probate, Estates and Fiduciaries Code.

The mayor of Philadelphia has, in good faith, made several serious allegations concerning the management of The Edwin Forrest Home. The board of managers of the Home has, in equal good faith, denied those allegations. The court is of the opinion that the mayor of Philadelphia, the citizens of Philadelphia, the Attorney General of Pennsylvania, and the board of managers would greatly benefit were there to be a full and complete disclosure of the operations of The Edwin Forrest Home. Therefore, the court urges the mayor and the Attorney General to file an appropriate petition under Section 7783 of the Not for Profit Corporation Code and to take whatever other action they deem necessary and proper. The court is confident that the petitioner can obtain as full and complete a disclosure of the operations of the Home under §7783 of the Not for Profit Corporation Code as he could were the Home to file a trustee's account under §7181 of the Probate, Estates and Fiduciaries Code.